# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| **BRIAN WILBANKS,**<br>    Plaintiff,<br><br>v.<br><br>**PARKER AEROSPACE FILTRATION DIVISION,**<br>    Defendant. | Case No. 1:24-cv-275-CLM |

## MEMORANDUM OPINION

Brian Wilbanks sues his former employer, Parker Aerospace Filtration Division, for age discrimination under the Age Discrimination in Employment Act. 29 U.S.C. § 623. (Doc. 1). Parker asks the court to grant it summary judgment. (Doc. 18). For the reasons explained below, the court **GRANTS** Parker's motion.

## BACKGROUND

Parker hired Wilbanks as a Senior Buyer when he was 55 and fired him when he was 60. The parties debate why. Parker says that it fired Wilbanks because he failed to perform his job adequately. Wilbanks says that Parker fired him because of his age. Because the ultimate question is whether Parker presents enough evidence to allow a reasonable juror to find that Parker fired him because he was 60—rather than because Wilbanks struggled to perform his job—the court details Wilbanks' employment history below.

### A. Parker hires Wilbanks

Parker hired Wilbanks (then 55) in late 2017 to be a Senior Buyer in Parker's aerospace filtration division. That division produces aerospace fuel filters and operates in three cities: Colorado Springs, Colorado; Greensboro, North Carolina; and Sylacauga, Alabama. Wilbanks worked

1

in Sylacauga. As a Buyer, Wilbanks interfaced with suppliers, submitted purchase orders, evaluated supplier performance, summarized and reported information, and so on.

### B. Wilbanks' performance

Parker says that it fired Wilbanks because he struggled to perform his job year after year, despite being put on a plan to help improve his performance. The court describes Parker's evidence by year.

#### i. 2019 Performance Evaluation

For the 2019 fiscal year, Wilbanks' then manager, Thomas Lewandowski, rated Wilbanks' overall job performance as a 3.44/5.00. Lewandowski noted that Wilbanks "needs to continue to develop. Key metrics . . . are not near goal, and inventory levels are not ok on all parts." (Doc. 19-1, p. 16). Lewandowski also noted that "Brian is reactive in his work. Brian does what he is told instead of seeking out what could be done next," and "Brian draws flawed or incorrect conclusions from data. Brian does not examine data sufficiently to make accurate predictions." (Doc. 19-2, p. 67–69). Wilbanks was around 57 years old at the time.

#### ii. 2020 and 2021 Performance Evaluations

In the fall of that same year, Wilbanks started reporting to Alecia Rice, the aerospace filtration division's Supply Chain Manager. Rice rated Wilbanks' overall performance for fiscal year 2020 as a 3.13/5.0. The next fiscal year, Rice lowered Wilbanks' performance rating to a 2.89/5.0. Rice noted areas in which Wilbanks needed to improve while also acknowledging the COVID-related challenges of 2020.

#### iii. 2022 Performance Evaluation

After issuing Wilbanks' 2021 performance evaluation, Rice started highlighting areas that needed improvement. For instance, in June 2022, Rice emailed Wilbanks a list of tasks he needed to improve on and a document reiterating Wilbanks' responsibilities as a Buyer. But at the end of the 2022 fiscal year, Rice again lowered Wilbanks' performance rating

to a 2.34/5.0. Rice complained that Wilbanks failed to implement new methods, ignored problems, and needed to improve his efficiency.

  *iv.*  *The Performance Improvement Plan*

In August 2022, Rice put Wilbanks on a Performance Improvement Plan ("PIP"), which contained a list of work objectives and goals. Wilbanks told Wilbanks that he could be fired if he failed to follow the PIP. Rice and Wilbanks met twice in September 2022 to discuss the PIP. At both meetings, Rice highlighted things Wilbanks had inaccurately reported or priced.

Rice took medical leave shortly after the second PIP meeting. While Rice was on leave, Wilbanks met with Manager Clayton James about his work performance. When Rice returned to work in November, Rice and Wilbanks resumed their PIP meetings. At one December PIP meeting, Rice pointed out that Wilbanks spent too much time creating MRE reports and made several suggestions of how Wilbanks could decrease the time spent working on these reports. Later that month, Rice emailed Wilbanks (who annotated) the results of his PIP:

Brian,

On 08/24/2022, we began a Performance Improvement Plan (PIP) based on an underperforming performance assessment and unacceptable levels of work performance. This letter is to document the results and conclusions associated with that plan.

Below is the summary of the areas for improvement and corresponding results:

1) Open Order Reports – Open order reports are to be sent to each supplier weekly and purchase order due dates to be updated in MSS once supplier's response is received.
   - Open orders have been sent to suppliers and Brian has identified this is a time-consuming activity.
2) MRE Report – MRE Report to be worked fully each week. POs need to be placed timely, and date changes made to expedite or defer POs based on MSS information, historical usage and expected future volumes.
   - MRE report is being reviewed and need to focus on cleaning up MSS data to drive accurate MRE messages. No suggestions on improvement to the MSS data, MRE report or assistance needed have been identified. [handwritten: First PIP was to "Work MRE fully each week." which was done. This is a different requirement.]
3) PO Updates – anytime a price changes or date change is known, the PO must be updated. Make sure past due PO dates are updated to realistic dates.
   - Some past due POs are still outstanding; however improvement has been noted in this area.
4) Improved Follow-Up on action items – if an item is assigned to you, it must be completed in a timely manner, or escalated if you need assistance. Find and create a tracking mechanism to help you stay on top of the actions you need to complete.
   - During this time period, DSCM and Plant Manager were out on medical leave and this activity has been hard to evaluate. No critical issues were escalated to leadership during this time. [handwritten: PM was here when DSCM was out. PIP meetings were held.]
5) Part Shortages – improve the early identification and mitigation of part shortages. Use the MRE tools and system information to be proactive about handling part shortages. Once a shortage is known, you must be proactive and assertive when working with the supplier.
   - Improvement has been made in this area and the number of shortages has been reduced. It is unclear what process was changed to improve in this area.
6) Inventory – keep a close eye on what items you are bringing in and make sure we are holding proper levels of inventory. Walk around the warehouse at least once a month to see items we have excess on, need to dispose of, etc...
   - Inventory levels need to be more closely monitored and efforts placed on reduction activities.
7) Reconcile Issues – research and correct issues that are brought to you by receiving, AP, your peers, in a timely manner.
   - Improvement has been made in this area
8) SC Expectations – review attached SC Expectations and make sure all critical items are completed.
   - While some progress on deflation projects has been made, more focus is needed on strategic activities such as negotiations, deflation projects, supplier meetings, etc..

(*Id.*, p. 101). Rice concluded her email by stating:

4

> In reviewing your performance since the commencement of your PIP, some improvements have been made around the areas of concern, however you have not successfully improved your overall performance to be removed from the improvement plan. There continues to be apprehension surrounding the successful longevity and consistency of the improved behavior moving forward. Efforts need to be placed on identifying process improvements, eliminated wasted time throughout the day and ways to make the workload more manageable. Working 60+ hours a week to complete these requirements is not the solution. *[handwritten: All original Requirements were Met.]*
>
> As a valued team member, we are providing you the opportunity to extend the plan based on the lack of significant improvement:
>
> - You will remain in your current role as a Buyer and will be extending the Performance Improvement Plan thru 2/28/2023
> - It will continue to be your responsibility to schedule update meetings to be held with your manager to review your progress.
> - At the end of this extension, if your performance has not met expectations, it may lead to further corrective action, up to and including termination from the employment of Parker Hannifin.
> - As a reminder, if at any time during this process you are removed from the performance improvement plan due to satisfactory performance, a recurrence of the performance deficiency within a twelve (12) month period from the date you were removed from the performance improvement plan may result in your being terminated from the employment of Parker Hannifin.
>
> Sincerely,
>
> Alecia Rice

(*Id.*, p. 2). Rice and Wilbanks met in early January 2023 to discuss Wilbanks' annotations and the PIP extension. The pair then met six more times over the next two months to discuss Wilbanks' poor job performance and lack of improvement. Rice continually expressed concerns and dissatisfaction with Wilbanks' job performance, including

> - The inaccuracy and incompleteness of Wilbanks' MRE reports and CDF analysis,
> - Wilbanks' wasted time,
> - The lack of updated MSS data,
> - Wilbanks' dependence on other employees.
> - A failure to timely escalate or take action on POs,
> - Spreadsheet inaccuracies,
> - Order mismanagement, and so on.

After one of their February 2023 meetings, Wilbanks sent Rice a revised MRE report attached to the following email:

> The way you showed me will really streamline the push-outs, and pull in, way in advance. A while back in the past I was using the MRE, and filtering out something, and you said DON'T DO THAT, it'll mess it up, so I've been leery of filtering in the MRE, until now. […] I can see where you would think I'm clueless now. Working the MRE like this will really streamline material flow, and inventory overages. I'm actually really looking forward to coming in and getting this straight, so moving forward will be great.

(*Id.*, p. 110). Rice forwarded this email to Anna Namvansy, a Parker Human Resource office. A few weeks later, Rice recommended Wilbanks' termination. Parker officially fired Rice in March 2023.

### C.    Lawsuit

Wilbanks then sued Parker under the ADEA, claiming that Parker (through Wilbanks' supervisor, Rice) fired him because of his age. In his deposition, Wilbanks described his claim like this:

> Q: Why do you believe [you were discriminated against]?
> A: Because, I mean, I think [Rice's] ultimate goal was for me to be terminated.
> Q: Why do you believe that?
> A: Because of my age.
> Q: Did she ever say anything that suggested to you that her ultimate goal was to have you terminated?
> A: No.
> Q: So why do you think that?
> A: Through the crushing amount of work she gave me, through her attitude towards me, through putting me through a PIP I successfully finished, and then putting me on another one because she wasn't there to execute me.

6

(Doc. 19-1, p. 40). According to Wilbanks, Rice singled him out by requiring him to track anticipated projects and their estimated monthly cost savings, (*id*., p. 28); increased his workload while younger employees' workloads remained the same, (*id*.); and treated him differently than younger employees like Kailey Lyon, a Supply Chain Leadership Development Associate. (Doc. 1, p. 5–6).

Wilbanks also claims that Rice spoke aggressively to him during team meetings beginning around the end of 2021. (Doc. 19-1, p. 22). Wilbanks alleges that Rice once made a comment during a staff meeting stating "good, no gray" after scanning the attendees. (Doc. 1, p. 4). Wilbanks argues that Rice's statement was derogatory towards older employees. *See infra,* Discussion Part B.

Parker now asks the court to grant summary judgment in its favor. (Doc. 18).

## STANDARD

Summary judgment is appropriate only when the moving party shows there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it is one that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To avoid summary judgment, the nonmoving party must go beyond mere allegations to offer specific facts creating a genuine issue for trial. Fed. R. Civ. P. 56(e); *see also Anderson*, 477 U.S. at 324. In reviewing a motion for summary judgment, this court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party. *See Cuesta v. Sch. Bd. of Miami-Dade Cty.*, 285 F.3d 962, 966 (11th Cir. 2002).

## DISCUSSION

The parties argue their positions under the three-step, burden-shifting *McDonnell Douglas* framework:

1. Did Wilbanks present a prima facie case of age discrimination?
2. If so, did Parker present a reason for firing Wilbanks that did not involve his age?
3. If so, did Wilbanks present evidence that Parker's age-neutral reason was pretext?

They do so with good reason. Sitting en banc, the Eleventh Circuit has used *McDonnell Douglas* "to evaluate ADEA claims that are based upon circumstantial evidence of discrimination." *Chapman v. Al Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc).

But the Circuit Court has recently steered away from *McDonnell Douglas* and back toward Rule 56 by asking this simple question: Is there a "sufficient evidentiary basis for the jury to find that the defendant intentionally discriminated against the plaintiff?" *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 947 (11th Cir. 2023) (citing *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1194 (11th Cir. 2004)). The court follows the trend and applies Rule 56, not *McDonnell Douglas*.

### A. Parker's evidence of a nondiscriminatory reason

Rule 56(a) starts with the moving party's burden, so this court follows suit. The ADEA prohibits Parker from terminating Wilbanks "because of such individual's age." 29 U.S.C. § 623. Parker says that age played no part in its decision to fire Wilbanks; rather, Parker says that Rice fired Wilbanks because Wilbanks struggled to perform his job, despite Rice's efforts to help Wilbanks improve his performance.

Rule 56(c)(1) requires Parker to support its nondiscriminatory reason by submitting evidence that would prove that reason at trial. Rice testified that she decided to fire Wilbanks "due to failure to perform against the areas identified on his performance improvement plan" and that she told Wilbanks this was the reason for his termination. (Doc. 19-

8

3, p. 38). As detailed in the Background section, Parker offers testimonial and documentary support for this nondiscriminatory reason. For example:

- Wilbanks testified that he did not perform all the essential functions of his job, *see* (doc. 19-1, p.12–13);
- Wilbanks' performance rating declined every year from 2019 to 2022, *see* (doc. 19-2, p. 68–88);
- Because of his poor scores, Rice placed Wilbanks on a PIP, *see* (i*d.*, p. 95); which Rice extended after Wilbanks failed to improve, *see* (doc. 19-2, p. 101–02); and,
- Rice met with Wilbanks at least nine times between August 2022 and his termination in March 2023, each time trying to work with Wilbanks towards improvement. (Doc. 20, p. 15).

This is enough evidence to support a finding that Parker fired Wilbanks because of his performance—*i.e.*, a reason that does not violate the ADEA. Parker is therefore entitled to summary judgment unless Wilbanks offers evidence that supports a different, discriminatory reason that Parker fired him. *See* Fed. R. Civ. P. 56(a).

### B. Wilbanks' evidence of discrimination

To survive Parker's Rule 56 motion, Rule 56(c) requires Wilbanks to offer enough evidence to create a genuine dispute of material fact—*i.e.*, Wilbanks must provide evidence (not just speculation) that would allow a reasonable juror to find that Parker fired Wilbanks "because of [his] age." 29 U.S.C. § 623, not because of his performance.

In his response brief (doc. 24), Wilbanks offers three facts that he claims prove that age, not performance, was the reason Rice wanted to fire him. The court decides below whether any presents evidence that Parker (through Rice) fired Wilbanks "because of his age." 29 U.S.C. § 623.

### A. Rice preferred Lyons

Wilbanks says that evidence shows that Rice wanted to replace him with a younger Buyer, Kailey Lyon, who was in her 20s:

> Defendant's actions toward Plaintiff establish pretext. Plaintiff successfully worked for Defendant for several years prior to Rice coming on board and prior to his termination. He received "Performing" scores on his reviews, indicating that he was meeting expectations. It all went south when Rice hired a young intern, Kailey Lyon, as a Buyer in July 2022. Lyon was over 30 years younger than Plaintiff.
>
> Around the same time the young intern was hired into a permanent position, Rice gave Wilbanks his first poor evaluation and began to treat him differently. It was during this time that Rice began speaking in an abrupt and harsh manner toward Wilbanks. She also increased his workload, causing him to work 50 or 60 hours per week. She also placed Wilbanks on a PIP and added numerous tasks to his job. The purpose of the PIP was to build a record to terminate Plaintiff.

(Doc. 24, p. 21). But Lyons' promotion to Buyer at the Greensboro office in 2022 fails to create a genuine question whether Rice fired Wilbanks from the Sylacauga office because of his age in 2023 for a couple of reasons.

First, Rice didn't hire Lyons; Lyons finished a two-year program for college graduates and thus became a full-time employee. Further, Lyons worked in the Greensboro office, not Sylacauga where Wilbanks worked; Lyons had no disciplinary or performance issues; and there's no evidence that Rice considered moving Lyons to Sylacauga to replace Wilbanks—which leads to the second point.

Second, Lyons didn't take Wilbanks' job after Rice fired him. Lyons and another development program employee (Jackson Bandy) performed many of Wilbanks' duties while Rice looked for Wilbanks' replacement. But Rice ultimately hired 40-year-old Richard Rhodes to become the Sylacauga-based Buyer, thus belying Wilbanks' assertion that Rice fired him so she could hire Lyons because she was in her twenties.

10

Third, Wilbanks' problems started long before Lyons finished her development program in July 2022. As the chart below shows, Wilbanks' performance score dropped all four years *before* Lyons became a Buyer in July 2022 (the red line):



*See* (doc. 19-2, p.83) (showing that the FY2022 evaluation period ran from July 1, 2021 through June 30, 2022).

In short, Wilbanks fails to link Lyons' elevation from Development Associate to Buyer in July 2022 to Rice firing Wilbanks in March 2023. So Lyons' elevation to Buyer in the Greensboro office fails to properly support Wilbanks' assertion that Rice decided to fire him because of his age, rather than his performance. *See* Fed. R. Civ. P. 56(e).

### B. Rice says "Good, no gray"

Wilbanks next argues that, during a video Teams meeting with many Parker employees, Rice said "good, no gray" and that comment could allow a reasonable juror to find that Rice did not like older employees.

1. *Wilbanks' testimony*: Here is how Wilbanks described the call:

> Q: But you don't remember any examples of things that she said?
>
> A: Like there was one incident where we were in Teams, in a big Teams meeting, and there were a lot of us there.

11

> And as the — before the — as the meeting was getting started — everybody was in the Teams meeting and you could see all the faces. And right there at the start of the meeting she said, Good, no gray. And I -- and I thought what does that, you know -- but I – that's when I realized that most of the new people in there were young people, you know. And there was like only a couple of us that were -- that were older. And I thought, that's interesting.
>
> Q: What did you perceive Ms. Rice to mean when she said 'good, no gray'?
>
> A: That there were less older people in the meeting.

(Doc. 19-1, pp. 22-23).

But Wilbanks was not with Rice when she made the comment, so he admitted that he could not see what Rice saw on her screen. (*Id.*, p. 23). Wilbanks also admitted that he did not know what Rice meant when she made the comment. (*Id.*). And Wilbanks testified that "I don't think it was directed at any individual." (*Id.*).

When asked about the comment later, Wilbanks testified that no one at Parker talked negatively about older employees:

> Q: Other than the 'good, no gray' comment, did you ever hear anyone at Parker say anything that you perceived as negative about age?
>
> A: No.
>
> Q: Did you ever hear anyone at Parker say anything negative about older people or older employees generally?
>
> A: Not to my remembrance.
>
> Q: Did anyone ever tell you that they had heard a negative comment made at Parker about age?

12

> A: Not that I remember.

(Doc. 19-1, p. 53).

2. *Rice's response*: Wilbanks deposed Rice two days after testifying that Rice made the "gray" comment but did not ask her about it. (Doc. 19-3). So Rice later provided this declaration that flatly denies the comment:

> Mr. Wilbanks alleges that I made a comment during a Zoom meeting stating "good, no gray." I did not make any such comment during any Zoom meeting and do not know what Mr. Wilbanks is referring to.

(Doc. 19-6, p. 9). *See* Fed. R. Civ. P. 56(c)(4) (allowing declarations that set out admissible facts about which the witness is competent to testify).

3. *Analysis*: Because Wilbanks is the non-moving party, the court must assume that Rice made the "good, no gray" comment. That said, a comment that there is "no gray" at the start of a video call could be about many things that have nothing to do with Rice's motivation to fire Wilbanks some time in the future. As Wilbanks admits, he can only *guess* that Rice meant something derogatory toward older employees because he was not with Rice; he does not know what Rice saw on her screen; and he does not know what Rice was thinking. Further, Wilbanks was on the call, making it less likely the comment was derogatory toward him.

"[A]n inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence but is pure conjecture and speculation." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1982) (quotation omitted). And "[s]peculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Cordoba v. Dillard's Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (emphasis in original) (quotation omitted).

Because Wilbanks relies on speculation to link Rice's "good, no gray" comment to Rice's decision to fire him, and Wilbanks could not point to

any other comment about age during his five-year employment, Wilbanks fails to properly support his assertion that Rice fired him because she was prejudiced against older employees. *See* Fed. R. Civ. P. 56(e).

### C. Wilbanks' replacement

Finally, Wilbanks points out that his replacement, Richard Rhodes (40), was 20 years younger than he was (60). Wilbanks is correct that this 20-year age gap makes one of the requisite showings of a prima facie case under *McDonnell Douglas*. *See, e.g.*, *Liebman v. Metro. Life Ins. Co.*, 808 F.3d 1294, 1298-99 (11th Cir. 2015) (per curiam) (seven-year gap satisfied Step 1's 'substantially younger' element); *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1360 (11th Cir. 1999) (five-year gap was sufficient); *Reed v. Forney Indus., Inc.*, 800 Fed. App'x 782, 786-87 (11th Cir. Jan. 28, 2020) (seven-year gap was sufficient).

But whether you apply *McDonnell Douglas* or Rule 56, an age gap alone is not enough to make the ultimate showing that Rice decided to fire Wilbanks "because of [his] age." 29 U.S.C. § 623. Once Parker offered enough evidence to support an age-neutral reason for firing Wilbanks, Rule 56(c) required Wilbanks to counter with evidence that his age caused his firing. Pointing to an age gap alone is not enough. For example, in *Reed*, the Circuit Court found that the district court erred when it found that replacing a 58-year-old with a 51-year-old failed to make a prima facie case in Step One of *McDonnell Douglas*. *Reed*, 800 Fed. App'x at 786. Yet, the Circuit Court affirmed the district court's granting of summary judgment because "while this age difference is sufficient to make out a prima facie case of age discrimination, it is not sufficient to show discriminatory intent." *Id.* (citing *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1471 (11th Cir. 1991)).

Without more, Rice's decision to replace Wilbanks with a 40-year-old fails to support a finding that Rice fired Wilbanks because he was 60. Put another way, there is no evidence that would support a finding that—faced with Wilbanks' performance record before and after the PIP—Rice would have retained Wilbanks if he was 40 rather than 60. As a result,

the court finds that the age gap between Wilbanks and his replacement fails to properly support Wilbanks' assertion that Rice fired him "because of [his] age," 29 U.S.C. § 623, not his performance. *See* Fed. R. Civ. P. 56(e).

—

Whether Rice was right or wrong about Wilbanks' ability to perform his job is beside the point. While Wilbanks may think that Rice's judgment of his performance was wrong, or that she stacked the deck against him, the ADEA does not allow Wilbanks (or jurors by extension) to second-guess Rice's business decision unless it was motivated by age. As the Circuit Court put it:

> federal courts 'do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, the ADEA does not interfere. Rather our inquiry is limited to whether the employer gave an honest explanation of its behavior.'

*Chapman*, 229 F. 3d at 1030 (quoting *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir.1991)).

Parker satisfied its burden of providing evidence that could prove it fired Wilbanks because of his performance. Wilbanks offers no evidence that would allow a reasonable juror to instead find that Rice fired him "because of [his] age." 29 U.S.C. § 623. Because Wilbanks fails to properly support his fact assertion that Parker fired him because of his age, there is no genuine issue of fact to try, making summary judgment appropriate under Rules 56(a) and 56(e)(3).

## CONCLUSION

For these reasons, the court **GRANTS** Parker's motion for summary judgment. (Doc. 18). The court will enter a separate order consistent with this opinion that grants Parker judgment and closes this case.

**DONE** and **ORDERED** on May 7, 2025.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE